UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:12-CV-00766-JHM

NS TRANSPORTATION BROKERAGE CORPORATION                    PLAINTIFF

V.

LOUISVILLE SEALCOAT VENTURES, LLC                          DEFENDANT
d/b/a LOUISVILLE SEALCOAT COMPANY

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Louisville Sealcoat Ventures, LLC's ("LSV") Motion for Partial Summary Judgment [DN 43]. Fully briefed, this matter is ripe for decision. For the following reasons, the Motion for Partial Summary Judgment is **DENIED**.

I.    BACKGROUND

In the fall of 2011, Plaintiff NS Transportation Brokerage Corporation ("NSTBC") and Defendant LSV entered into a contract[1] for LSV to initially prepare, and then sealcoat and stripe the surface of a large asphalt lot located at NSTBC's Shelbyville, Kentucky Automotive Service Hub ("Yard"). NSTBC alleges that as of May 2012, the work was not completed by LSV, and that the work that was performed was deficient and non-compliant. (Compl. [DN 1] ¶ 10.) Thereafter, NSTBC terminated its contract with LSV for failing to remedy the work pursuant to the express terms of the contract. Prior to termination of the contract, NSTBC had paid LSV $160,940.00 in progress payments. (Cohen Decl. Ex. H [DN 44-12].)

On November 19, 2012, NSTBC filed this action based on diversity jurisdiction against LSV alleging claims for breach of contract and breach of warranty, or in the alternative, for

---

[1] The parties, though not disputing that a contract for these services existed, dispute which document—Project Contract 106101 or Proposal #2385—constitutes their written agreement. The Court does not address this issue here, as it not relevant to the motion before the Court.

negligence.  (Compl. [DN 1] ¶¶ 3, 17–35.)  NSTBC alleges that LSV's work was deficient: that the sealcoat application was inadequate, as the sealcoat was too thin and in some places missing; that due to LSV's failure to properly prepare the Yard or perform the sealcoat application, the striping paint applied was flaking off and the sealcoat was crumbling; that the striping lines were applied with inconsistent widths, when a uniform 4-inch width was required by the contract; and that the stenciling was not completed to contract specifications.  (Id. ¶¶ 10–14.)  NSTBC seeks damages for the cost to correct LSV's allegedly substandard work and complete the project.

On September 22, 2014, Defendant filed this Motion for Partial Summary Judgment [DN 43] to dismiss Count 3 of NSTBC's Complaint, the negligence claim.  Defendant asserts that the Court must dismiss Plaintiff's negligence claim because it is barred by the "economic loss rule."

## II.   STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Instead, the Federal Rules of Civil Procedure require the non-moving

party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

In a diversity action, this Court must apply the substantive law of Kentucky "in accordance with the then-controlling decision of [Kentucky's highest court]." Pedigo v. UNUM Life Ins. Co. of Am., 145 F.3d 804, 808 (6th Cir. 1998) (citation and internal quotation marks omitted). Where Kentucky courts have not decided the precise issue at hand, this Court must determine the path that the state would likely follow. Overstreet v. Norden Labs., Inc., 669 F.2d 1286, 1290 (6th Cir. 1982).

### III.    DISCUSSION

Defendant contends that Plaintiff's negligence claim is barred by the economic loss rule. Plaintiff counters that under Kentucky law, the economic loss rule does not apply to contracts for services, and that the contract at issue here is a contract for services. Therefore, according to Plaintiff, the economic loss rule does not apply here.

"The 'economic loss rule' prevents the commercial purchaser of a *product* from suing in tort to recover for economic losses arising from the *malfunction of the product itself*, recognizing that such damages must be recovered, if at all, pursuant to contract law." Giddings & Lewis, Inc. v. Indus. Risk Insurers, 348 S.W.3d 729, 733 (Ky. 2011) (emphasis added). Thus, the economic loss rule permits recovery for personal injury or damage to property other than the product purchased, but denies recovery for damage to the product itself. Id. at 738. Judge Heyburn has

explained that "[v]irtually every classic description of the economic loss rule pertains to and often limits its application to the sale of products.  The cases make this distinction in order to preserve the distinction between the remedies available under the U.C.C. and those available in tort." Louisville Gas & Elec. Co. v. Cont'l Field Sys., Inc., 420 F. Supp. 2d 764, 769 (W.D. Ky. 2005).

> The economic loss rule marks the border between tort and contract law.  Where tort law, primarily out of a concern for safety, fixes the responsibility for a defective product directly on the parties responsible for placing the product into the stream of commerce, contract law gives the parties to a venture the freedom to allocate risk as they see fit.

Giddings & Lewis, 348 S.W.3d at 738–39 (quoting Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc., 276 F.3d 845, 848 (6th Cir. 2002)).

## A.  Applying Controlling Law of Kentucky's Highest Court—Giddings & Lewis

Although the economic loss rule has been applied to cases involving Kentucky law on multiple occasions, the Kentucky Supreme Court did not formally adopt the economic loss rule until Giddings & Lewis, Inc. v. Industrial Risk Insurers, 348 S.W.3d 729 (Ky. 2011).  The court explained

> We adopt the East River Steamship Court's holding that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself." [East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 871 (1986)].  This rule recognizes that economic losses, in essence, deprive the purchaser of the benefit of his bargain and that such losses are best addressed by the parties' contract and relevant provisions of Article 2 of the Uniform Commercial Code.  See Kentucky Revised Statutes (KRS) 355.2–101 et seq.  Like the United States Supreme Court, we believe the parties' allocation of risk by contract should control without disturbance by the courts via product liability theories borne of a public policy interest in protecting people and their property from a dangerous product.  [476 U.S.] at 867.  Thus, costs for repair or replacement of the product itself, lost profits and similar economic losses cannot be recovered pursuant to negligence or strict liability theories but are recoverable only under the parties' contract, including any express or implied warranties.  Losses for injuries to people and to "other property," in these commercial transactions, remain subject to the traditional product liability theories.  This holding is entirely consistent with the

latest Restatement of Torts which allows the buyer of a defective product to recover in tort for injuries to persons or other property but not for economic losses. See Restatement (Third) of Torts: Products Liability §§ 1 and 21 (1998).

Giddings & Lewis, 348 S.W.3d at 738.  Specifically, the Kentucky Supreme Court held that the economic loss rule applies to "claims arising from a defective product sold in a commercial transaction." Id. at 733.  It is undisputed that Plaintiff's negligence claim does not arise from the sale of a defective product in a commercial transaction, and therefore, under the controlling authority of Kentucky's highest court, the economic loss rule does not apply.

### B.  Predicting Kentucky Supreme Court's Ruling on These Facts

In this case, however, the Court faces a proposed extension of the economic loss rule. Essentially, Defendant is requesting the Court expand the economic loss rule to a construction contract.  Specifically, Defendant argues that the contract at issue is a construction contract and contends that the Kentucky Court of Appeals has held, in Cincinnati Insurance Cos. v. Staggs & Fisher Consulting Engineers, Inc., Nos. 2008-CA-002395-MR, 2009-CA-001123-MR, 2013 WL 1003543 (Ky. Ct. App. Mar. 15, 2013), and that federal courts applying Kentucky law have predicted that Kentucky's economic loss rule applies to construction contracts.  Defendant contends that, notwithstanding that the Giddings & Lewis holding concerned the sale of a product, "nothing in the Staggs & Fischer [sic] decision or in the federal-court predictions that Kentucky would apply the economic loss rule to construction contracts is inconsistent with the Giddings & Lewis decision."  (Def.'s Rep. [DN 46] 3.)

### 1.  Construction Services Contract

The Court first addresses Defendant's premise that the contract at issue is a construction contract.  Defendant acknowledges that it is undisputed that the contract at issue is for construction work (services).  However, Defendant contends that the description "services contract" "is too general and misleading" and asserts that the contract is instead a "construction

contract." (Def.'s Rep. [DN 46] 1.)  Whatever the specific label, the Court first notes that there is no contention that the contract is governed by the U.C.C. or that the contract is for the sale of a product.[2]  Further, the Court finds that the contract is one for services, specifically construction work, and shall refer to it as a "construction services contract."[3]

### 2.  Kentucky Court of Appeals Unpublished Decision in Staggs & Fisher

Defendant asserts that Staggs & Fisher held that the economic loss rule applies to claims for breaches of construction contracts for allegedly defective construction work and that nothing in that opinion is inconsistent with Giddings & Lewis.  The Court finds that Defendant's reliance on Staggs & Fisher is misplaced.  At most, even if one were to conclude that it was decided correctly, Staggs & Fisher might stand for the proposition that the economic loss rule applies to construction contracts of the sort found under the facts of that case.  It cannot however, stand for the proposition that the economic loss rule applies to the type of services contract as we have in this case.

### 3.  Prior Federal Courts Predictions

Defendant also asserts that federal courts have predicted that Kentucky courts would apply the economic loss rule to construction contracts.  Contrary to Defendant's assertion, however, federal courts have not predicted that the economic loss rule would apply in a case such as this.  Instead, federal courts applying Kentucky law, both before and after the Giddings & Lewis decision, that have addressed the issue of whether the economic loss rule should apply to the provision of services consistently have held that the Kentucky Supreme Court would not apply the economic loss rule to service contracts.  See, e.g., Lewis v. Ceralvo Holdings, LLC,

---

[2] The Restatement defines "product" in relevant part as "tangible personal property distributed commercially for use or consumption" and specifically states, "[s]ervices, even when provided commercially, are not products." Restatement (Third) of Torts: Prods. Liab. § 19(a), (b) (1998).

[3] See KRS 371.180(1)(a) (defining "construction services contract").

No. 4:11-CV-00055-JHM, 2012 WL 32607, at *3 (W.D. Ky. Jan. 6, 2012); Rodrock v. Gumz,

No. 4:11-CV-00141-JHM, 2012 WL 1424501, at *4 (W.D. Ky. Apr. 24, 2012); Louisville Gas &

Elec. Co. v. Cont'l Field Sys., Inc., 420 F. Supp. 2d 764, 769–70 (W.D. Ky. 2005).

In Louisville Gas & Electric, the defendants argued that the economic loss rule should be

extended to service contracts.  420 F. Supp. 2d at 768–69.  In determining whether such an

expansion of the rule should be allowed, Judge Heyburn noted the "conceptual difficulty of

applying the economic loss rule to services."  Id. at 769.  He found that the cases addressing the

economic loss rule in Kentucky attempted to "preserve the distinction between the remedies

available under the U.C.C. and those available in tort[, but] [s]uch a distinction would be

immaterial here because the U.C.C. does not govern services."  Id.  Ultimately, Judge Heyburn

found nothing to suggest that Kentucky courts were likely to expand the economic loss rule to

contracts for services.  Id. at 769–70; see also Grace v. Armstrong Coal Co., No. 4:08-CV-109-

JHM, 2009 WL 366239, at *4 (W.D. Ky. Feb. 13, 2009) (finding that the economic loss rule

does not apply to employment contracts); Brewer Mach. & Conveyor Mfg. Co. v. Old Nat'l

Bank, 248 F.R.D. 478, 481 (W.D. Ky. 2008) (refusing to apply the economic loss rule to an

account contract between plaintiff and its bank).  Since Louisville Gas & Electric and Giddings

& Lewis, this Court has continued to rebuff expansion of the rule to cover contracts for services.

See Lewis, 2012 WL 32607, at *3 (finding that, like service contracts, economic loss rule does

not apply to mineral lease contract); Rodrock, 2012 WL 1424501, at *4 (declining to expand the

economic loss rule to service or employment contracts).

The only support Defendant offers for its assertion is the quote "federal courts charged

with the task of applying Kentucky law have predicted that Kentucky courts would limit the

application of the economic loss rule to products liability cases, business purchases cases, and

*construction cases.*" (Def.'s Rep. [DN 46] 3 (quoting <u>Lewis</u>, 2012 WL 32607, at \*2).) This quote originally derives from <u>Davis v. Siemens Medical Solutions USA, Inc.</u>, 399 F. Supp. 2d 785 (W.D. Ky. 2005), where the court cited authority for each context the economic loss rule applied. <u>See id.</u> at 801 (citing <u>Ohio Cas. Ins. Co. v. Vermeer Mfg. Co.</u>, 298 F. Supp. 2d 575, 577–78 (W.D. Ky. 2004) (products liability); <u>Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.</u>, 276 F.3d 845, 849 (6th Cir. 2002) (business purchase); <u>Bowling Green Mun. Utils. v. Thomasson Lumber Co.</u>, 902 F. Supp. 134 (W.D. Ky. 1995) (construction)).

The case originally cited for the proposition that the economic loss rule applies to "construction cases," <u>Bowling Green Municipal Utilities</u>, did not involve a construction services contract, but the purchase of a defective product. The case involved a purchaser of defective utility poles attempting to recover both economic and noneconomic losses from the pole manufacturer and the pole treater. 902 F. Supp. at 135–36. The plaintiff sought recovery in both tort and contract for the defective products. <u>Id.</u> at 135. The court held that the economic loss doctrine precluded recovery under tort where the damage was the defective poles themselves, but that recovery in tort for damage to other property was permitted. <u>Id.</u> at 138–39. Thus, the Court finds that <u>Bowling Green Municipal Utilities</u> does not provide support for Defendant's contention that federal courts have predicted that the economic loss rule would apply to construction service contracts.

Furthermore, in all of the cases cited by <u>Davis</u>, the economic loss rule applied to prevent a purchaser of a product from suing in tort to recover economic losses. Each court's discussion of the economic loss rule assumed that its application was limited to circumstances involving the sale and provision of products. <u>See Ohio Cas. Ins. Co.</u>, 298 F. Supp. 2d at 577; <u>Mt. Lebanon</u>, 276 F.3d at 848–49; <u>Bowling Green Mun. Utils.</u>, 902 F. Supp. at 136–37; <u>see also</u> <u>Louisville Gas</u>

& Elec., 420 F. Supp. 2d at 769 ("Virtually every classic description of the economic loss rule pertains to and often limits its application to the sale of products. The cases make this distinction in order to preserve the distinction between the remedies available under the U.C.C. and those available in tort.").

For these reasons, the Court finds no evidence that Kentucky would expand the economic loss rule to contracts for services. Thus, the Court concludes that the economic loss rule does not apply to the present case, and therefore does not bar Plaintiff's negligence claim. Accordingly, the Court **DENIES** Defendant's motion for partial summary judgment based on the economic loss rule.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment [DN 43] is **DENIED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

March 9, 2015

cc: counsel of record